## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TONI ECHOLS, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | 2:07-cv-354-JHH |
| BELLSOUTH TELECOMMUNICATIONS, INC., | ) | |
| | ) | |
| DEFENDANT. | | |

## SECOND MEMORANDUM OPINION

### I.   INTRODUCTION

Before the court is the Motion (doc. #11) for Summary Judgment of Defendant BellSouth Telecommunications, Inc. ("BellSouth") filed on December 3, 2007, as that motion relates to Count I of the Complaint.  On April 10, 2008, this court granted summary judgment for BellSouth on Count II of the Complaint, but stayed consideration of Count I pending relevant decisions on the standard of review from the Supreme Court and the Eleventh Circuit.  (See Doc. #20 at 19-21, 26-27, 31).

Those decisions have now issued, see Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008) and Doyle v. Liberty Life Ass. Co. of Boston, – F.3d –, 2008 WL 4272748 (11th Cir. Sept. 18., 2008) and the parties have each had the opportunity to brief the court on the impact of those cases to the pending action.  (See Docs. #24,

25). In addition, the Eleventh Circuit has issued an opinion in Lee v. BellSouth Telecommunications, Inc., 2009 WL 596006, No. 07-14901 (11th Cir. March 10, 2009), which opinion each party has represented to this court is also relevant to the standard of review issue remaining to be determined in Echols' case.[1]

Defendant's motion (doc. #11) for summary judgment, as that motion relates to Count I of the Complaint, is now under submission.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always

---

[1] In her brief (doc. #21) of April 24, 2008, Plaintiff argued that the opinion of Judge Proctor in Lee v. BellSouth Tele., Inc., 2:06-cv-38, which involved the same plan at issue in Echols' case, was flawed because it relied on Burroughs v. BellSouth Tele., Inc., 2007 WL 195450 (11th Cir. July 6, 2007) on the standard of review issue. Plaintiff represented that Lee was on appeal to the Eleventh Circuit and stated: "The court may wish to consider delaying a ruling on this [Echols] case until the Eleventh Circuit decides . . . Lee . . ." (Doc. #21 at C 12). In its brief (doc. #24) of July 17, 2008, BellSouth also reiterated that: "The independence between BellSouth and Broadspire was closely examined in Lee . . . At pages 4-5 of this decision, Judge Proctor recounts the facts concerning the BellSouth/Broadspire relationship and the finding of the Plan at issue here. Judge Proctor concluded that no conflict of interest exists … In response to defendant's Reply Brief (doc. #15), plaintiff has filed a Supplementary Evidentiary Submission In Opposition to BellSouth's Motion for Summary Judgment (doc. #22). The plaintiff in the Lee case submitted the exact same evidentiary materials in that case as have been submitted here." (Doc. #24 at 2, 3).

2

bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See id. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could [find] for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17, citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc).  If the moving party bears

the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving

party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

### III.   STATEMENT OF FACTS

The facts have been thoroughly set forth in the court's Memorandum Opinion and Order (doc. #20) filed on April 10, 2008.  As those facts have not changed, they will not be recounted but are adopted and incorporated herein.

### IV.   DISCUSSION

#### A.   Framework of Analysis

This court has already determined that Broadspire's decision denying benefits to Echols for the time periods of November 7, 2005 through November 10, 2005 and November 15, 2005 through November 20, 2005 was wrong when reviewed on a *de novo* basis.  (See Doc. # 20 at 21-26).  The remaining task is to analyze that decision

under the appropriate standard of review.

In <u>Williams v. BellSouth Telecomms., Inc.</u>, 373 F.3d 1132, 1138 (11th Cir. 2004), the Eleventh Circuit set forth a model for use in judicially reviewing ERISA denials:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision is in fact "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

<u>Williams</u>, 373 F.3d at 1138 (footnotes omitted).  But recent Supreme Court and Eleventh Circuit law mandates that if there is a conflict of interest, then the reviewing court must consider the conflict as being a *factor* in determining whether the plan

administrator has acted arbitrarily and capriciously.[2] See Lee, 2009 WL 5966006 at *6, citing MetLife, 128 S. Ct. at 2346 and White v. Coca-Cola Co., 542 F.3d 848, 853-54 (11th Cir. 2008).

### B. Determination of Which Standard of Review Applies to the Decision

Day-to-day administration of plan matters has been delegated by BellSouth to the Employees' Benefit Committees ("EBC") and/or the Employees' Benefit Claim Review Committees ("EBCRC"). (AR at BST 0041). Effective September 3, 1996, the BellSouth EBCRC delegated to Broadspire the duty to administer all claims for plan benefits for BellSouth. (AR at BST 0041). In that capacity, Broadspire has "discretionary authority to determine whether and to what extent participants are eligible for benefits and to construe disputed or doubtful plan terms." (AR at BST 0041). Such unfettered discretion to determine eligibility for short term disability benefits makes clear that the arbitrary and capricious standard of review is triggered. See Hunt v. Hawthorne Assocs., Inc., 119 F.3d 888, 912 (11th Cir. 1997)("To trigger [the arbitrary and capricious] standard of review, the language conferring discretion on the administrator must be express language unambiguous in its design.") (internal

---

[2] That is, conflict of interest is no longer the impetus for applying a heightened arbitrary and capricious standard. See Creel v. Wachovia Corp., 2009 WL 179584, No. 08-10961 at *6 (11th Cir. Jan. 27, 2009), citing White v. Coca-Cola Co., 542 F.3d 848, 854 (11th Cir. 2008). And the burden is on the plaintiff to show the existence of such a conflict, not on the defendant to disprove its influence. See id., citing Doyle, 542 F.3d at 1360.

quotation marks omitted); see also Lee, 2009 WL 596006 at *7 ("On this record, BellSouth plainly granted an independent administrator – Broadspire – unfettered discretion to determine eligibility for SD Plan benefits.") Although the recent decisions of MetLife and Doyle instruct this court to consider any conflict of interest as a factor in the arbitrary and capricious analysis, here the plan administrator determining eligibility for benefits does not pay those benefits out of its own assets.[3]

---

[3]Plaintiff argues extensively that the Trust maintained by BellSouth creates a conflict of interest which should be considered in the analysis of her claim. This court disagrees, and adopts and incorporates herein the thorough and well-reasoned findings of Judge Proctor to the contrary in Gibbs v. BellSouth Telecomms., Inc., 2:06-cv-1657 at 20-25 and Lee v. BellSouth Telecomms., Inc., 2:06-cv-380 at 18-23. (Lee has been reversed and remanded to the district court *on other grounds*. 2009 WL 596006, No. 07-14901 (11th Cir. March 10, 2009)). Those two district court cases involved the same plan at issue here and analyzed the *same arguments* on the conflict of interest issue as are made by Plaintiff and Defendant here. (See Doc. #21 at C1-C6; Doc. #24 at 2-4). And nothing in the recent MetLife Supreme Court opinion has affected the consideration of these trust principles. See Townsend, 295 Fed. Appx. at *975, n.1, citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948 (1989). Judge Proctor's analysis, in pertinent part, is recounted here for ease of reference:

> Plaintiff relies on the Eleventh Circuit's decision in *Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132 (11th Cir. 2004), and contends that, even though BellSouth employed Broadspire as its claims administrator with the authority to make decisions regarding benefit claims, the taint of self-interest still infected the decision here and thus requires the application of the heightened arbitrary and capricious standard. In *Williams*, the court considered whether the employment of a separate "claims administrator" to process and decide claims that were then paid by the company (who retained the "plan administrator" title) resolved the conflict. *Williams*, 373 F.3d at 1136-37. The court found that based upon the facts in *Williams*, despite the employment of a separate claims administrator, "BellSouth nevertheless holds the ultimate power to do with claims as it wants; it just has to tell [the claims administrator] when to do it." *Williams*, 373 F.3d at 1136-37. As a result, the Eleventh Circuit concluded that "the conflict between BellSouth's fiduciary and profit-making interest, which triggers the heightened standard of review, remains." *Williams*, 373 F.3d at 1136-37. Plaintiff notes that, in this case, the denial of Plaintiff's STD claim saved BellSouth

$52,090.40 in STD Plan benefits and, therefore, BellSouth directly profited from the denial of benefits and a conflict of interest exists. Accordingly, "[t]he [conflicted] fiduciary ... should bear the burden of dispelling the notion that its conflict of interest has tainted its judgment." *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1568 (11th Cir. 1990).

In response, BellSouth argues that its use of the Trust from which disability benefits are paid distinguishes this case from *Williams* and negates any other argument that Broadspire was under any conflict of interest which would necessitate a "heightened" arbitrary and capricious standard of review. (Doc. # 17, at 8) ("The *Williams* Court did not analyze the effect of a trust for the payment of benefits on the applicable standard of review.")). As the court noted in *Brown,* "[t]he burden of demonstrating the reasons for a challenged plan interpretation will, by and large, draw a distinction between plans that are truly trusts and plans that are based solely on contracts or policies for insurance. Decisions on behalf of a plan in the form of a trust lend themselves less readily to the accusation of conflicting interests and are more easily justified." *Brown*, 898 F.2d at 1567. Thus, "[t]hat plan administrators' decisions have had a favorable impact on the balance sheet of the trust itself, however, suggests no 'conflict of interest.'" *Brown,* 898 F.2d at 1567-68.

Plaintiff counters by claiming that the Trust is nothing more than an illusion or pass-through that does not insulate BellSouth from the taint of self-interest. Unfortunately for Plaintiff, the recent decision of *Burroughs v. BellSouth Telecommunications, Inc.,* 2007 WL 1954050 (11th Cir. July 6, 2007), which was issued after the parties submitted their summary judgment materials in this case, flies in the face of that analysis and squarely rejects the district court's application of a heightened arbitrary and capricious standard based upon the very arguments made by Plaintiff here. In *Burroughs*, the district court applied the heightened standard to a benefits decision made by BellSouth and Broadspire because it concluded that "no matter what entities in addition to [BellSouth] contributed to [BellSouth]'s denial decision and were interposed by [BellSouth] as insulators [through the trust vehicle], [BellSouth] was the actual decision-maker and was operating under a conflict-of- interest." *Burroughs v. BellSouth Tele., Inc.*, N.D. Ala. CV-01-AR-1863-M (July 21, 2006) (Doc. # 16, Ex. 13, at 10). The Eleventh Circuit disagreed with the district court's analysis, and issued the following pithy holding which explicitly rejects the application of the heightened standard in that case and implicitly rejects the conclusion that the Trust employed by BellSouth to pay its claims is nothing more than a fiction:

> The 2002 documents for the Plan state the claims
> administrator has exclusive, final, discretionary authority to

9

See Townsend v. Delta Family-Care Disability & Survivorship Plan, 295 Fed. Appx. 971, 975 (11th Cir. Oct. 8, 2008), citing Levinson v. Reliance Standard Life Ins. Co., 245 F.3d 1321, 1326 (11th Cir. 2001). Therefore, the only remaining question is whether it was arbitrary and capricious for Broadspire to deny benefits to Echols for the time periods of November 7, 2005 through November 10, 2005 and November 15, 2005 through November 20, 2005.

C.     **Application of the Standard**

Under arbitrary and capricious review, "the plan administrator's decision to deny benefits must be upheld so long as there is a 'reasonable basis' for the decision." Oliver v. Coca-Cola Co., 497 F.3d 1181, 1195 (11th Cir. 2007), *reh'g granted and*

---

> interpret the Plan and determine benefits. Under these circumstances, the proper standard of review for the benefits decision is arbitrary and capricious. See Buckley, 115 F.3d at 939. We have determined the district court applied the incorrect standard of review to the claims administrator's decision.
>
> *Burroughs*, 2007 WL 1954050, at *1.
>
> This court cannot distinguish *Burroughs* from the facts of this case in any principled fashion . . . Although *Burroughs* was not selected for publication and thus is not binding precedent, it is nonetheless persuasive reasoning that leads this court to reject Plaintiff's attempt to use evidence regarding the nature of the Trust to show that a conflict of interest exists in this case. *See* Eleventh Circuit Rule 36-2. Accordingly, this court concludes that the heightened arbitrary and capricious standard does not apply here. Instead, the court will review the decision in this case pursuant to the *regular* arbitrary and capricious standard that is akin to an abuse of discretion review.
>
> Lee, 2:06-cv-380 at 19-23 (footnotes omitted).

*partially vacated on other grounds*, 506 F.3d 1316 (11th Cir. 2007), quoting Jett v. Blue Cross & Blue Shield of Ala., 890 F.2d 1137, 1140 (11th Cir. 1989). That is, "this Court's role is limited to determining whether [Broadspire's] interpretation was made rationally and in good faith – not whether it was right." Guy v. Southeastern Iron Workers Welfare Fund, 877 F.2d 37, 38 (11th Cir. 1989). The determination of the plan administrator "need not be the best possible decision only one with a rational justification." Griffis v. Delta Family-Care Disability Plan, 723 F.2d 822, 825 (11th Cir. 1984).

If a reasonable basis exists for the decision made by Broadspire, "it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision." Jett v. Blue Cross & Blue Shield, Inc., 890 F.2d 1137, 1138 (11th Cir. 1989); see also Sharron v. Amalgamated Ins. Agency Servs., Inc., 704 F.2d 562, 564 (11th Cir. 1983) ("a court should enforce a decision of pension fund trustees even though the court may disagree with it, so long as the decision is not arbitrary and capricious"). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Fin. Cos. Retirement Plans, 887 F.2d 689, 693 (6th Cir. 1989), quoting Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir. 1985).

The first step in the reasonableness inquiry is to look at the language of the SD

Plan. See 29 U.S.C. § 1104(a)(1) (stating that an ERISA fiduciary shall discharge its duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]"). Under the terms of the Plan at issue, to be eligible for "partial-day" benefits, Echols must provide "satisfactory medical evidence consistent with the disability[4] that supports the return to work on a modified schedule." (AR at BST 0079). And "[o]nly once we determine whether [Echols] provided objective medical evidence of a medical condition do we examine whether that medical condition rendered her unable to perform 'any type of work'" absent a modified schedule. See Lee, 2009 WL 596006 at *7.

Echols underwent laparoscopic surgery in September 2005. (AR at BRO 0137). Less than a month later, on October 4, 2005, Echols required a hysterectomy. (AR at BRO 0137). With the initial application and on appeal, Echols relied on Dr.

---

[4] A disability is defined by the Plan as:

> A medical condition which makes a Participant unable to perform any type of work as a result of a physical or mental illness or an accidental injury. "Any type of work" includes the Participant's regular job with or without accommodations, and other Participating Company job (regardless of availability) with or without accommodations, or temporary modified duties. "A Participating Company job" is any job within a Participating Company; or any job outside a Participating Company which is comparable in skills and functions. A Participant subject to a Disability is referred to as being "Disabled."

(AR at BST 0077).

Denson's recommendation that she return to work part time, beginning November 7, 2005, for a period of two weeks, as well as her own subjective complaints of pain following two consecutive surgeries, to establish that her objective medical condition required the use of short term disability benefits.[5] (See Doc. #13 at 4-7; Doc. #20 at 23). Specifically, Dr. Denson instructed Echols to "return to activities of daily living and part time work for the next 2 weeks [beginning November 7, 2005]." (AR at BRO 0137, 0181, 0185, 0194, 0255, 0257, 0279).

Broadspire determined that Dr. Denson's recommendation was unsatisfactory to establish the severity needed to qualify for partial-day benefits.[6] (AR at BRO 0307-0309). The final denial letter indicates that all of the medical information

---

[5] This is not a case where constant pain, coupled with consistent observations of physical manifestations of pain, act as "objective" medical evidence of a disability. See Lee, 2009 WL 596006 at *8, citing Oliver v. Coca-Cola Co., 497 F.3d 1181, 1197 (11th Cir. 2007) ("[I]n *Oliver* we concluded that a plan administrator acted arbitrarily and capriciously in denying benefits to a claimant who suffered from fibromyalgia and chronic pain syndrome on the ground that he had not provided 'objective' evidence of his pain.").

[6] The denial of benefits failed to reference the Plan language governing eligibility for partial-day benefits. (AR at BRO 0185, 0191, 0205). A thorough review of the Administrative Record and the Plan provisions indicates that Broadspire should have at least referenced the standard governing Echols' application for partial-day benefits as related to the disability claim. (AR at BST 0077-0079). BellSouth's memorandum of law essentially conceded this point, articulating that partial day benefits *could* cover the time period. (See Doc. #11, Exh. 1 at 8-9). "Broadspire denied plaintiff's application for *partial day benefits* explaining that the medical information submitted by her and her doctor showed that she did not exhibit post-operative complications . . . the medical information submitted did not substantiate a severity of illness or functional impairment that warranted modified tour (partial-day) benefits." (Doc. # 11, Exh. 1 at 5).

submitted by Echols was considered by the Appeals Review Committee prior to the rendering of a decision. (AR at BRO 0307). It is noted that medical information submitted four weeks postoperatively indicated no surgery related complications and a well-healed vaginal cuff. (AR at BRO 0308). Although Lortab and Phenergan were required for pain and nausea, and Echols was advised not to drive while taking the medications, no side effects or cognitive difficulty as a result of using narcotics was noted. (AR at BRO 0308). Additional visits to the doctor for symptoms consistent with a urinary tract infection, although ultimately leading to a urology referral, did not support, or even suggest, an inability to work during the contested time period. (AR at BRO 0308). With this sum total of information to support the claim for partial day benefits – "he [the doctor] want[s] her [Echols] on modified tours because she had 2 surgeries back to back," (AR at BRO 0137); a return-to-work note with "light" duty underlined (AR at BRO 0181); an encounter summary with addendum note indicating that four weeks post surgery Echols was still on pain medication and that she should not drive (AR at BRO 0194); and a note that Echols required medication for a urinary tract infection and that she should not drive on that medication (AR at BRO 0255) – compared to the weight of medical evidence evidencing a normal postoperative course with no complications (AR at BRO 0181, 0195, 0196, 0220-0221, 0224-225, 0259, 0260, 0261, 0305-0306, 0308) – it was reasonable for

Broadspire to deny Echols partial day benefits for the time periods of November 7, 2005 through November 10, 2005 and November 15, 2005 through November 20, 2005.  See Jett, 890 F.2d at 1138.

## V.   CONCLUSION

For the reasons asserted above, the motion (doc. # 11) for summary judgment, as it relates to plaintiff's claim under Count I, is due to be granted.  A separate order will be entered.

**DONE** this the ___9th___ day of April, 2009.

*/s/ James H. Hancock*
SENIOR UNITED STATES DISTRICT JUDGE